IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REBECCA S.,[1]                                                      Case No. 6:20-cv-01289-SB

             Plaintiff,                          **OPINION AND ORDER**

       v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,[2]

             Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Rebecca S. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Disability Insurance

Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction to hear this

appeal pursuant to 42 U.S.C. § 405(g), and all parties have consented to the jurisdiction of a U.S.

Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, the Court reverses

_____

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] Kilolo Kijakazi became the acting Commissioner of the Social Security Administration on or about July 9, 2021 and is substituted for Andrew Saul as the defendant. *See* FED. R. CIV. P. 25(d)(1).

PAGE 1 – OPINION AND ORDER

the Commissioner's decision because it is based on harmful legal error and not supported by substantial evidence.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was born in March 1967, making her fifty years old on April 14, 2017, her alleged disability onset date.[3] (Tr. 53, 113, 129.) Plaintiff completed two years of college

---

[3] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 07-cv-01016, 2008 WL

coursework and has past relevant work experience as a rural mail carrier, deliver outside/courier, and canteen operator. (Tr. 53, 217.) In her DIB application, Plaintiff alleged disability due to a "[m]issing dis[c]" in her cervical spine at C5-C6, which is "causing [a] pinched nerve." (Tr. 113, 129.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on September 17, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 46.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on March 25, 2019. (Tr. 62-112.) On April 15, 2019, the ALJ issued a written decision denying Plaintiff's application. (Tr. 46-54.) On June 17, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-7.) Plaintiff now seeks judicial review of the ALJ's decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social

---

4490024, at *4 n.3 (E.D. Cal. Sept. 30, 2008). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citations omitted). Thus, Plaintiff's date last insured of December 31, 2022 (*see* Tr. 46) reflects the date on which her insured status will terminate based on the prior accumulation of quarters of coverage. If Plaintiff established that she was disabled on or before December 31, 2022, she is entitled to DIB. *See Truelsen v. Comm'r Soc. Sec.*, No. 2:15-cv-02386, 2016 WL 4494471, at *1 n.4 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999))).

Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the impairment meets or equals a listed

impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the

claimant can perform other work that exists in significant numbers in the national economy. *Id.*

at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*,

262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those

steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at

step five of the analysis, where the Commissioner must show the claimant can perform other

work that exists in significant numbers in the national economy, "taking into consideration the

claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d

at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262

F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is

disabled. (Tr. 46-54.) At step one, the ALJ determined that Plaintiff had not engaged in

substantial gainful activity since April 14, 2017, her alleged onset date. (Tr. 48.) At step two, the

ALJ determined that Plaintiff suffered from the following severe impairments: "[D]egenerative

disc disease of the cervical and lumbar spines, as well as left rotator cuff tendinitis with

impingement[.]" (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment

that meets or medically equals a listed impairment. (Tr. 49.) The ALJ then concluded that

Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to these

limitations: (1) Plaintiff can occasionally crawl, reach overhead bilaterally, push and pull with

the bilateral upper extremities, and tolerate exposure to vibration; and (2) Plaintiff cannot tolerate "exposure to workplace hazards such as unprotected heights and exposed, moving machinery," or climb ladders, ropes, and scaffolds. (Tr. 50.) At step four, the ALJ concluded that Plaintiff could not perform her past relevant work. (Tr. 52-53.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a photocopy machine operator, ticket seller, and fast food worker. (Tr. 54.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred by: (1) failing to provide specific, clear, and convincing reasons for discounting Plaintiff's symptom testimony; (2) failing to provide legally sufficient reasons for discounting the opinions of Plaintiff's treating providers, Jeffrey Johnson, M.D. ("Dr. Johnson") and his physician's assistant, Martha Wiggers ("Wiggers"), and examining physician, Mary Cunningham, M.D. ("Dr. Cunningham"); and (3) finding the opinions of the non-examining state agency physicians, Neal Berner, M.D. ("Dr. Berner") and Susan Moner, M.D. ("Dr. Moner") "greatly" persuasive. (Pl.'s Opening Br. at 2.) As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. Accordingly, the Court reverses the Commissioner's decision.

## I.    PLAINTIFF'S SYMPTOM TESTIMONY

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce

the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)

(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "'[i]f the

claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the

claimant's testimony about the severity of the symptoms if she gives specific, clear and

convincing reasons for the rejection.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014)

(citation omitted).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting

medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the

claimant's testimony or between her testimony and her conduct, daily activities inconsistent with

the alleged symptoms, and testimony from physicians and third parties about the nature, severity

and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL

2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th

Cir. 2008), *Lingenfelter*, 504 F.3d at 1040, and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th

Cir. 1997)).

## B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided

objective medical evidence of underlying impairments which might reasonably produce the

symptoms alleged. (*See* Tr. 50, the ALJ determined that Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was

therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom

testimony. *See Ghanim*, 763 F.3d at 1163. The Court finds that the ALJ failed to meet that

standard here.

///

///

### 1.    Conservative Treatment

The ALJ discounted Plaintiff's symptom testimony on the ground that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." (Tr. 51.) In support of this finding, the ALJ noted that Plaintiff's treatment has been "very conservative" and consisted "largely [of] over-the-counter and prescription medication." (Tr. 51.)

An ALJ may discount a claimant's testimony based on "evidence of conservative treatment." *Guith v. Kijakazi*, 857 F. App'x 272, 273 (9th Cir. 2021) (simplified). Here, however, the record does not support the ALJ's finding that Plaintiff's treatment has been conservative. In fact, the Commissioner "[a]dmit[s]" that there is "merit" to Plaintiff's argument that the ALJ erred in characterizing her treatment (which included surgery, chiropractic care, physical therapy, acupuncture, muscle relaxers, anti-inflammatories, steroid injections, and over-the-counter and prescription pain medications) as "conservative." (Def.'s Br. at 5; Tr. 51.)

The Commissioner, however, asserts that Plaintiff's treatment history nevertheless "created questions about the reliability of [her] claims," because after undergoing surgery, Plaintiff "has been treated largely with over-the counter and prescription medication." (Def.'s Br. at 5.) The Court finds these arguments unpersuasive.

The district court's decision in *Lisa L. v. Kijakazi*, No. 1:20-cv-00494-SI, 2021 WL 3663068, at *5 (D. Or. Aug. 18, 2021), is instructive here. In that case, the claimant had undergone cervical spine surgery to treat her pain, and the ALJ discounted the claimant's testimony on the ground that her treatment history was "conservative." *Id.* The district court concluded that the ALJ erred in discounting the claimant's testimony on this ground, noting that "[s]urgery is generally not a conservative course of treatment," and that "the ALJ herself noted that [the claimant] has 'tried multiple treatment modalities including physical therapy,

nitroglycerine, anti-inflammatories, nerve relaxers, steroids, and muscle relaxers, as well as over-the-counter and prescription pain medication.'" *Id.*

Similarly here, Plaintiff underwent cervical spine surgery to treat her symptoms, and both the ALJ and Commissioner acknowledge that Plaintiff has tried multiple treatment modalities, as noted above. Accordingly, as in *Lisa L.*, this Court finds that the ALJ erred in discounting Plaintiff's testimony on the ground that she engaged in conservative treatment.

## 2.    Reported Activities

The ALJ also discounted Plaintiff's symptom testimony based on her reported activities. (Tr. 52.) Specifically, the ALJ noted that Plaintiff reported that she can "perform adequate self-care, care for her pets, prepare simple meals, do household chores, and go out to the store," and stated that "[t]hese activities indicate a higher level of function than that alleged by [Plaintiff]." (*Id.*)

An ALJ may discount a claimant's testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination."); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."); *Garrison*, 759 F.3d at 1016 (explaining that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"). "Even where [the] activities suggest some difficulty functioning, they may be grounds for discrediting [the claimant's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Peebles v. Saul*, 827 F. App'x 727, 729 (9th Cir. 2020) (citation omitted).

///

The ALJ's discussion of Plaintiff's reported activities falls short of satisfying the Ninth Circuit's specificity requirement, and therefore does not amount to a clear and convincing reason for discounting Plaintiff's testimony. Ninth Circuit authority "requires the ALJ to specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (simplified); *see also Burrell*, 775 F.3d at 1138 (explaining that general findings are insufficient, as the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints," and therefore refusing to rely on a finding that did not meet "our requirements of specificity") (simplified). That does not mean that an ALJ must "perform a line-by-line exegesis of the claimant's testimony," or "draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277. But Ninth Circuit case law plainly requires that the ALJ identify "*which* testimony [he] found not credible, and . . . explain[] *which* evidence contradicted that testimony," not just "offer[] non-specific conclusions[.]" *Id.* (simplified); *see also id.* at 1278 ("The district court's efforts to shore up the ALJ's decision, while understandable, are unavailing. Although the inconsistencies identified by the district court could be reasonable inferences drawn from the ALJ's summary of the evidence, the credibility determination is exclusively the ALJ's to make, and we are constrained to review the reasons the ALJ asserts.") (simplified).

In discounting Plaintiff's symptom testimony, the ALJ cited several activities (Plaintiff's ability to perform adequate self-care, care for her pets, prepare simple meals, do household chores, and go to the store), but only supported his finding with the conclusory statement that "[t]hese activities indicate a higher level of function than that alleged by [Plaintiff]." (Tr. 52.) That was improper because the ALJ was required to explain what testimony he found not

credible, and because the cited activities do not appear to undermine Plaintiff's testimony. (*See* Tr. 232-39, Plaintiff reported that she cannot "lift, push, pull or reach without aggravating [a] pinched nerve," she has "severe pain [and] weakness all the time even while at rest," her pet care consists of feeding her cat, letting the cat outside, and petting the cat, she finds it "[e]xhausting to hold [a hair] dryer," she does not "cook much" and usually spends ten minutes making eggs, salads, and sandwiches, she spends ten minutes a day doing dishes and one hour a week vacuuming, she shops every other week for one hour, and she cannot mow or use a rake or shovel; *see also* Tr. 86, Plaintiff testified that she has difficulty picking up a gallon of water and needs to use "both hands" to do so, and that she uses a "tiny smart cart [in order to] go grocery shopping now").

For these reasons, the ALJ erred in discounting Plaintiff's testimony based on her reported activities.

### 3.    Conclusion

The Commissioner argues that the ALJ provided a third clear and convincing reason for discounting Plaintiff's testimony: "A lack of supportive medical evidence[.]" (Def.'s Br. at 4, citing Tr. 51). A lack of supporting medical evidence, however, cannot be the sole reason for discounting a claimant's testimony. *See Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (noting that an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason" (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005))); *see also Taylor v. Berryhill*, 720 F. App'x 906, 907 (9th Cir. 2018) (holding that the ALJ "failed to provide clear and convincing reasons supported by substantial evidence to support her conclusion that [the claimant's] testimony was not entirely credible," and noting that a "lack of objective medical evidence cannot be the sole

reason to discredit claimant testimony" (citing *Burch*, 400 F.3d at 681)). Accordingly, the Court concludes that the ALJ committed harmful error in discounting Plaintiff's testimony.

## II.    MEDICAL OPINION EVIDENCE

### A.    Applicable Law

Plaintiff filed her application in October 2017. (Tr. 46.) "For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. 416.920c governs how an ALJ must evaluate medical opinion evidence." *Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) (citation omitted); *see also Linda F. v. Saul*, No. 20-cv-05076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020) ("Because [the] plaintiff filed her applications after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence.").

Under the new regulations, the Commissioner will "no longer give any specific evidentiary weight," let alone controlling weight, "to any medical opinion." *See Allen O. v. Comm'r of Soc. Sec.*, No. 3:19-cv-02080-BR, 2020 WL 6505308, at *5 (D. Or. Nov. 5, 2020) (simplified), *appeal filed* No. 21-350006 (9th Cir. Jan. 4, 2021). Instead, as this Court recently explained, "the ALJ considers all medical opinions and evaluates their persuasiveness based on supportability, consistency, relationship with the claimant, specialization, and 'other factors.'" *Robert S. v. Saul*, No. 3:19-cv-01773-SB, 2021 WL 1214518, at *3 (D. Or. Mar. 3, 2021) (simplified).

"The new regulations require ALJs to articulate how persuasive they find all of the medical opinions and explain how they considered the supportability and consistency factors." *Id.* (simplified). At a minimum, "this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2). Accordingly, "the more

relevant the objective medical evidence and supporting explanations presented and the more consistent with evidence from other sources, the more persuasive a medical opinion or prior finding." *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2).

"The ALJ may but is not required to explain how other factors were considered," including (1) the "relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination)," (2) "whether there is an examining relationship," (3) specialization, and (4) "other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Id.* (quoting *Linda F.*, 2020 WL 6544628, at *2). The ALJ is, however, "required to explain 'how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical,'" and courts "must 'continue to consider whether the ALJ's analysis has the support of substantial evidence.'" *Id.* (citations omitted).[4]

### B.    Analysis

Plaintiff argues that the ALJ erred by failing to provide legally sufficient reasons for discounting the opinions of her treating providers, Dr. Johnson and Wiggers, and examining physician, Dr. Cunningham, and by finding the opinions of the non-examining state agency

---

[4] The Commissioner disagrees with Plaintiff's argument that an ALJ can reject certain medical opinion evidence only for "specific and legitimate" reasons, and responds that "these standards do not apply because they are inconsistent with the new regulatory scheme." (Def.'s Br. at 6.) Consistent with its prior decisions, the Court will consider whether the ALJ adequately addressed the persuasiveness, including the supportability and consistency, of medical opinion evidence at issue, because "[t]he Ninth Circuit has not yet addressed whether or how the new regulations alter the standards set forth in prior cases for rejecting a medical opinion," and "the new regulations still require the ALJ to explain [his] reasoning for discounting a medical opinion . . . to allow for meaningful judicial review." *Robert S.*, 2021 WL 1214518, at *4 (citations omitted).

physicians, Drs. Berner and Moner, "greatly" persuasive. The Court addresses these opinions in turn.

### 1.    Dr. Johnson and Wiggers

#### a.    Dr. Johnson and Wiggers's Opinion

Dr. Johnson and Wiggers issued a joint opinion on March 7, 2019. (Tr. 558-63.) In their joint opinion, Dr. Johnson and Wiggers explained that Plaintiff's diagnoses include cervical radiculopathy that was "not resolved by surgical repair," cervical spondylosis that results in pain and weakness in Plaintiff's left arm and neck, and cervical pain. (Tr. 563.) Dr. Johnson and Wiggers also opined that (1) on average, Plaintiff's impairments and treatment would cause her to miss four or more days of work per month; (2) Plaintiff's impairments cause her to have "[d]ifficulty using [her] hands," need "frequent rest [and] position change[s]," and need to limit her lifting; (3) Plaintiff has marked limitations in her activities of daily living; (4) Plaintiff would need multiple fifteen- to twenty-minute unscheduled breaks during an eight-hour workday; (5) Plaintiff would need to rest outside of her normal work breaks to relieve pain and fatigue; and (6) Plaintiff's "restrictions persisted" as of August 31, 2017 and "worsened" on June 5, 2018. (Tr. 558, 560, 562-63.)

#### b.    The ALJ's Decision

The ALJ found Dr. Johnson and Wiggers's joint opinion to be "minimally persua[sive]." (Tr. 52.) In so finding, the ALJ explained that the "extreme limitations" that Dr. Johnson and Wiggers identified in their opinion "are not consistent with the objective evidence of record, which shows improvement in the claimant's condition, nor are they consistent with the (9F) [sic]." (*Id.*) The ALJ also noted that "the frequency and substance of the claimant's treatment are not consistent with the medical professional's [sic] assertion of such extreme limitations." (*Id.*)

///

The Court concludes that the ALJ failed to provide legally sufficient reasons for discounting Dr. Johnson and Wiggers's joint opinion. As discussed above, the ALJ erred in discounting Plaintiff's testimony, which reflects that Plaintiff's condition did not improve. Furthermore, Plaintiff's spine surgeon, Dr. Johnson, corroborated that Plaintiff's condition "worsened" as of the date of her surgery, June 5, 2018, and that Plaintiff's cervical radiculopathy was "not resolved by surgical repair." (Tr. 563.) Additionally, Exhibit 9F (Dr. Johnson's treatment note dated December 12, 2018), which the ALJ cited as inconsistent with the joint opinion, in fact supports the opinion, noting that Plaintiff "had a return of left-sided neck and shoulder symptoms" approximately "one week after surgery," Plaintiff "had only modest relief of symptoms from the surgery," Plaintiff's "symptoms still prevent her from functioning at her usual level [and thus] [s]he has not returned to work," Plaintiff "completed postoperative physical therapy," Plaintiff's surgery was "radiographically successful but . . . only slightly successful from a clinical perspective," and Plaintiff could "consider repeat injections." (Tr. 479; *see also* Tr. 449, March 8, 2018, Dr. Johnson noted that he discussed surgery with Plaintiff, as "[s]he certainly has a positive MRI scan that seems to support her symptoms in some regards"; Tr. 334, June 15, 2017, an x-ray of Plaintiff's cervical spine showed "[s]evere loss of disc space height seen at C5-C6"; Tr. 302, July 3, 2017, Plaintiff's provider noted that two "views of the left shoulder . . . show[ed] moderate narrowing of the [glenohumeral] joint, [and] some degenerative changes of the [acromioclavicular] joint consistent with impingement," and that images of the cervical spine showed, among other things, that the "C5[-]6 disc space is completely gone" and there is "marked degenerat[ion] on many levels and degenerative changes of C5[-]6").

///

PAGE 14 – OPINION AND ORDER

Given this medical evidence and Plaintiff's symptom testimony the ALJ improperly rejected, the Court concludes that substantial evidence does not support the ALJ's determination that Dr. Johnson and Wiggers's opinion is inconsistent with either Plaintiff's symptoms, the objective evidence, Exhibit 9F, or the frequency and nature of Plaintiff's treatment.

### 2.    Dr. Cunningham

#### a.    Dr. Cunningham's Opinion

On November 11, 2017, Dr. Cunningham examined Plaintiff and prepared a report detailing her findings. (Tr. 312-19.) Dr. Cunningham noted that she interviewed Plaintiff, reviewed Plaintiff's diagnostic imaging studies and medical records through October 2, 2017, and examined Plaintiff. (Tr. 312-16.) With respect to Plaintiff's diagnostic imaging studies, Dr. Cunningham explained that Plaintiff's June 15, 2017 x-ray "showed significant spondylosis at C5-6," and Plaintiff's May 21, 2017 magnetic resonance imaging ("MRI") revealed "significant degenerative changes at C5-6," "significant facet arthrosis at multiple levels with mild central and significant foraminal stenosis at multiple levels . . . [and] most severe at C5-6," and "some [foraminal stenosis] at C6-7 which may be the cause of her radicular symptoms." (Tr. 316.)

Dr. Cunningham's diagnoses included (1) "[p]ossible cervical radiculopathy"; (2) "significant degenerative changes in the cervical spine"; and (3) "[d]egenerative changes [in her] left shoulder[.]" (Tr. 316-17.) Dr. Cunningham also addressed Plaintiff's work-related limitations, noting that Plaintiff can only push and pull ten pounds, Plaintiff needs to be limited to sedentary work, and Plaintiff would need ten-minute breaks every forty minutes.[5] (Tr. 319.)

---

[5] Plaintiff's counsel asked the VE about Dr. Cunningham's opinions and the VE testified that a worker could not sustain gainful employment if she needed ten minute breaks every forty minutes. (Tr. 106.) Plaintiff also notes that "[u]nder the Commissioner's Medical-Vocational Guidelines . . . , Plaintiff is presumed disabled starting at age fifty if she is limited to sedentary

Dr. Cunningham, however, stated that Plaintiff's restrictions would only apply for "3 mo[nth]s." (Tr. 319.)

### b.    The ALJ's Decision

The ALJ found Dr. Cunningham's opinion to be "minimally persua[sive]." (Tr. 52.) In so finding, the ALJ explained that Dr. Cunningham "noted that the limitations outlined [in her opinion] would last no more than three months, and would not be permanent restrictions." (Tr. 52.)

The Ninth Circuit has affirmed an ALJ's decision to discount a physician's opinion where the physician opined that the claimant's limitations would last less than the twelve months necessary to establish eligibility for disability benefits. *See, e.g.*, *Karpinski v. Berryhill*, 757 F. App'x 631, 633 (9th Cir. 2019) (holding that the ALJ did not commit reversible error in discounting a physician's opinion and noting that the "ALJ reasonably took into account [the physician's] opinion that [the claimant's] limitations would last eight months, short of the twelve months necessary to establish eligibility for disability benefits"). Unlike *Karpinksi*, however, the record here reflects that Plaintiff's condition deteriorated after the date of Dr. Cunningham's examination. Given the ALJ's failure to account for this fact, the ALJ erred in discounting Dr. Cunningham's opinion.[6]

///

///

///

---

work, cannot return to her past relevant work, and has no transferable skills." (Pl.'s Opening Br. at 19.)

[6] Given the findings discussed above, the Court agrees with Plaintiff that the ALJ also erred in finding the non-examining state agency physicians' opinions "greatly persua[sive]." (Tr. 52.)

### III.    REMEDY

####     A.    Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison*, 759 F.3d at 1020 (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

####     B.    Analysis

The Court finds that the credit-as-true standard is satisfied here and that remand for an award of benefits is appropriate.

First, the Court finds that the record has been fully developed. It includes several years of treatment notes, Plaintiff's testimony about her symptoms and limitations, and opinions from, among others, a treating spine surgeon. The ALJ also asked the VE a hypothetical question that

addressed whether a worker with Plaintiff's limitations could sustain gainful employment, and the VE testified that Plaintiff's limitations would preclude work. (*See* Tr. 106-07, the VE testified that a worker could not sustain competitive employment if she missed work more than "approximately one day a month" on a "regular ongoing basis"; *see also* Tr. 563, Dr. Johnson and Wiggers opined that on average, Plaintiff's conditions and treatment would cause her to miss work four or more days per month).

The Commissioner argues that further proceedings are necessary because "concerns about the evaluation of testimony are 'exactly the sort of issues that should be remanded to the agency for further proceedings.'" (Def.'s Br. at 12) (citation omitted). However, Ninth Circuit precedent and the objectives of the credit-as-true standard foreclose any argument that a remand for the purpose of allowing the ALJ to have a "mulligan" qualifies as a remand for a "useful purpose":

> Although the Commissioner argues that further proceedings would serve the 'useful purpose' of allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons, our precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a 'useful purpose' under the first part of credit-as-true analysis.

*Garrison*, 759 F.3d at 1021; *see also Benecke*, 379 F.3d at 595 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that [the claimant] is not credible any more than [the claimant], had he lost, should have an opportunity for remand and further proceedings to establish his credibility."). Accordingly, Plaintiff meets the first part of the credit-as-true analysis.

///

Second, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony, Dr. Johnson and Wiggers's opinion, and Dr. Cunningham's opinion. Accordingly, Plaintiff satisfies the second part of the credit-as-true analysis.

Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find Plaintiff disabled because her impairments would cause her to exceed the customary tolerance for absences.

For these reasons, and because the Court does not have serious doubt about whether Plaintiff is disabled, the Court exercises its discretion to remand this case for an award of benefits. *See Newton v. Saul*, 839 F. App'x 178, 179 (9th Cir. 2021) (reversing district court opinion remanding for further proceedings and instead remanding for an award of benefits where the "the record is complete [and] no legally sufficient evidence casts doubt on [the claimant's] disability"); *Varela v. Saul*, 827 F. App'x 713, 714 (9th Cir. 2020) (reversing district court opinion remanding for further proceedings and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled"); *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020) (reversing district court opinion affirming the denial of benefits and instead remanding "with instructions to remand to the ALJ for calculation and award of benefits").

///

///

///

///

///

**CONCLUSION**

Based on the foregoing reasons, the Court REVERSES the Commissioner's decision and

REMANDS this case for an award of benefits.

**IT IS SO ORDERED.**

DATED this 15th day of November, 2021.

_Stacie F. Beckerman_

HON. STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 20 – OPINION AND ORDER